F. B. Vandegrift & Co., Inc. *v.* United States (No. 5278)*

United States Court of Customs and Patent Appeals, December 7, 1967

*Allerton DeC Tompkins* for appellant.

*Carl Eardley*, Acting Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Arthur E. Schwimmer* for the United States.

[Oral argument October 3, 1967 by Mr. Tompkins and Mr. Schwimmer]

Before Worley, Chief Judge, and Judges Rich, Smith, Almond, Jones **

Rich, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, 57 Cust. Ct. 421, C.D. 2831, overruling the importer's protest to the collector's classification of small rectangular pieces of sheet drawn glass as glass laboratory articles under paragraph 218(a), subject to duty of 42½% ad valorem. The appellant claims classification as sheet glass under paragraph 219. We affirm.

The competing provisions of the tariff act are:

Classified under paragraph 218(a), Tariff Act of 1930 as modified by the Torquay Protocol to GATT, T.D. 52739 and T.D. 52820:

> Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all *scientific articles*, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or 218(e), Tariff Act of 1930), *finished or unfinished, wholly or in chief value of glass* [emphasis ours]_____ 42½% ad val.

---

*C.A.D. 928.

**Senior Judge, United States Court of Claims, sitting by designation.

Claimed under paragraph 219, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to GATT, T.D. 54108:

Cylinder, crown, and sheet glass, by whatever process made, and for whatever purpose used:

Not over 384 square inches_____ 0.7¢ per lb.

\*       \*       \*       \*       \*       \*       \*

*Provided,* That none of the foregoing weighing under 16 ounces but not under 12 ounces per square foot shall be subject to a less rate of duty than__ 17% ad val.

The merchandise at bar was taken out of the last-quoted proviso by stipulation of the parties. The merchandise was further described by the following stipulation:

The merchandise under protest consists of glass in the form of rectangles, 76 x 26 millimeters by 3/64 inches thick (plus or minus .007 inches allowance on sizes) and not over 384 square inches per pound, packed, 75 pieces to the package as represented by the sample herewith submitted \* \* \*.

The evidence further shows that the importer-appellant, a fabricator of glass manufactures, converts the imported glass into finished microscope or "micro-slides," by assembling the imported glass sheets in blocks of 75 pieces between clamps in an edge-grinding machine which grinds and polishes all four edges of the glass pieces, the finished dimensions being 75 x 25 millimeters, plus or minus 0.4 millimeter tolerance. The faces of the glass pieces are left untouched. Following grinding, the glass pieces, now micro-slides, are put through a washing operation followed by an inspection where any imperfect slides are withdrawn. Imperfections may be in the form of bubbles or unmelted particles ("stones") in the glass, stria, scratches or chips, visible dirt, and any oily or waxy film which would prevent uniform water dispersion on the surface. The finished slides, clean and ready for laboratory use are packaged in half-gross lots, 72 to the package.

As to use, the evidence shows that most of such slides are used in pathology laboratories for making blood smears in which use the smooth straight edge of one slide is used to smear a drop of blood across another slide. After such use a slide is usually discarded or sometimes it may be recleaned and reused for other purposes. The glass as imported is not used for such purposes and is not suitable therefor.

The managing partner of the importing firm testified as to a fugitive use of the imported glass. On direct examination he testified:

Q. \* \* \* Have you also used the merchandise in its condition as imported for other purposes? A. Yes, sir, we have.

Q. Will you mention what you personally know about other purposes? A. We have cut small circles from these sheets of thin small glass as imported, and sold them—in this case he was a gauge manufacturer, and they were used in gauge windows.

On cross-examination he said:

Q. You referred to the use of this merchandise before the Court by taking and cutting a small circle from this slide? A. Yes, sir.

Q. And selling it to a gauge manufacturer? A. Yes, sir.

Q. How often have you done that? A. Very seldom. I think only twice.

It further appears that the glass from which the micro-slides are fabricated is imported from Belgium where it is manufactured initially by the sheet drawing process in sheets which may be as large as 7 x 9 feet, sheets too fragile to ship, which are cut up into smaller sizes. The importer testified he could order sheet glass in any desired size from the factory and that the imports are just "sheet glass."

Appellant's basic argument is that the small rectangles imported are still mere sheet glass, a raw material, even though made into rectangles abroad which are dimensioned to within 1 mm. in both length and width of the final dimensions of the micro-slides which constitute the final manufactured product, relying on the language "for whatever purpose used" in paragraph 219 and this court's decision in *United States* v. *Clay Adams Co.*, 24 CCPA 150, T.D. 48625.

The facts and circumstances in *Clay Adams* were quite different from those before us here. There sheets of crown glass were imported in sizes not disclosed in the opinion, their thickness being .12 to .17 millimeters. The sheets were cut up *in this country* and largely used to make microscope slide cover-glasses. They were also *used for at least three others purposes*, the covering of mirrors, in cheap jewelry, and in the making of polariscope lenses. The collector had classified the imported glass under paragraph 230(d) as "All glass, and manufactures of glass, * * * not specially provided for." The importer claimed under paragraph 219, the Customs Court sustained that protest. The Government appealed, asserting the collector's classification was correct and alternatively urging classification under paragraph 218(a) as scientific glass. The importer cross-appealed urging the importation was sheet glass under paragraph 219. This court affirmed the finding of proper classification under 219 as "crown glass." Here the glass was not cut to the desired size in this country and no other substantial use than micro-slide manufacture was established by appellant, on whom rests the burden of proving the collector's classification was wrong. We do not regard *Clay Adams* as a persuasive precedent.

The court below considered several other decisions of this court relied on by the parties, namely, *United States* v. *Central Scientific Co.*, 21 CCPA 214, T.D. 46749; *United States* v. *Semon Bache & Co.* 21 CCPA 218, T.D. 46750; *B. A. McKenzie & Co.* v. *United States*, 47 CCPA 42, C.A.D. 726; *United States* v. *Nylonge Corp.*, 48 CCPA 55, C.A.D. 764; and *United States* v. *Fred Frankel & Sons*, 52 CCPA 81, C.A.D. 862.

Quoting from our opinion in the *McKenzie* case, the Customs Court pointed out that "whether or not an article is a manufacture must depend upon the facts presented in each case to show the nature of the material involved and the degree of processing to which it was subjected prior to importation." Referring to the *Frankel & Sons* case and after quoting extensively therefrom, it concluded:

Defendant's reliance on the above case appears well justified. In the instant case, the glass rectangles ultimately become micro-slides. There is no evidence that they become anything else, except for possible fugitive uses. Other of the original possible uses of the sheet glass from which the rectangles were cut have been excluded. The sizes of the imported pieces, within a millimeter, are the sizes of the finished slides. What remains to be done is finishing by grinding and polishing the edges and cleaning all the surfaces. While these operations are necessary to produce a slide ready for use by the ultimate customer, at the time of importation, the destiny of the rectangles was clear and was limited to being processed into salable micro-slides.

We have considered all of appellant's arguments predicated on the history of paragraph 219 and its predecessor sections and the argument that it was intended to be an "invasive" provision by virtue of the words "for whatever purpose used," thereby taking out of paragraph 218(a) the unfinished microscope slides ("scientific articles * * * of glass") which are so slearly within it. We are unable to find in that history, as appellant asks us to do, justification for appellant's position. We agree with the conclusion of the Customs Court that

It does not direct the classifying authority to ignore the degree of advancement of the article to be classified and thus, anomalously, to put an unfinished manufactured article in a paragraph characterized as dealing with a "material."

As that court pointed out,

If it was intended to say that paragraph 219 was "invasive" of paragraph 218(a) this would overrule the *Central Scientific Co.*, case, *supra*, for there seems to be no reason to distinguish for invasion purposes between a finished scientific article and an unfinished one.

In *Central Scientific* this court held in 1933 that microscope slide coverglasses were classifiable under paragraph 218(a) and not under paragraph 227 as "optical glass * * * in any and all forms." Referring there to paragraphs 217–236 inclusive on glass and glass products, this court made the observation that

An analysis of these paragraphs cannot fail to convince one that it was the intent, at least, of the Congress to discriminate between manufactured products and raw material.

That observation applies equally to partially manufactured products which we believe the imports here to be, rather than raw material as appellant contends.

The judgment of the Customs Court is *affirmed*.